IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
MAY 1 0 2018
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Michael Brooke Cutrell,   )
  Petitioner,    )
         )
v.         )  1:17cv1230 (LMB/IDD)
         )
Harold Clarke,     )
  Respondent.    )

MEMORANDUM OPINION

Michael Brooke Cutrell, a Virginia inmate proceeding pro se, has filed a petition for a

writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his

conviction of burglary and other offenses entered by the Chesterfield County Circuit Court.

Before the Court is respondent's Motion to Dismiss the petition [Dkt. No. 16], to which

petitioner has filed a response. [Dkt. No. 23]  For the following reasons, the Motion to Dismiss

will be granted, and the petition will be dismissed with prejudice.

I. Background

Following a jury trial, Cutrell was convicted on July 8, 2013 of one count of felony

statutory burglary, felony grand larceny, and misdemeanor assault.  He was sentenced to a total of

47 years and 12 months imprisonment, with 20 years and 12 months suspended.  Case Nos.

CR12F02755-06 and -07, CR12M02874-01; Resp. Ex. A-1.

On direct appeal, Cutrell argued that the evidence was insufficient as a matter of law: (1)

to prove his identity as the perpetrator, and (2) to prove he was armed with a deadly weapon

when he entered the victim's home.  The petition for appeal was denied on February 26, 2014,

Cutrell v. Commonwealth, R. No. 1423-13-2 (Va. Ct. App. Feb. 26, 2014), and a three-judge

panel declined further review on July 2, 2014.  Resp. Ex. A-2.  The Supreme Court of Virginia

refused Cutrell's petition for appeal on January 15, 2015. <u>Cutrell v. Commonwealth</u>, R. No. 141178 (Va. Jan. 15, 2015); Resp. Ex. A-3.

Cutrell timely filed a petition for a state writ of habeas corpus in the Supreme Court of Virginia in which he raised the following claims:

1.  Trial counsel advised him not to accept a plea offer that would have capped his sentence at 14 years and to proceed to a jury trial instead:

    a.  Without advising him that the minimum sentence for armed statutory burglary was 20 years, and the maximum was life;

    b.  Without advising him as to the evidence that would be used against him at trial;

    c.  Without advising him as to the intended defense strategy;

    d.  By misleading him to believe that the Commonwealth's evidence was inadmissible and insufficient;

    e.  By deceiving him into believing that if he accepted the plea offer counsel would be unable to do anything further and he "would be on his own."

2.  Trial counsel was ineffective for failing to file a pretrial motion to suppress the victim's identification of petitioner as the perpetrator.

3.  Trial counsel was ineffective for failing to investigate and challenge the valuation of the victim's property that was used to charge grand larceny.

4.  Trial counsel was ineffective for failing to challenge the chain of custody of the DNA evidence.

5.  Trial counsel was ineffective for failing to present evidence favorable to the defense in the form of:

    a.  Petitioner's "prominently" tattooed arms:

2

      b.      Independent DNA expert testimony;

      c.      Petitioner's testimony in his own defense.

6.      Trial counsel was ineffective for failing to object when the trial court abused its discretion in denying the jury's request to view petitioner's prominent arm tattoos.

7.      His rights to due process and a fair trial were violated when the court refused to strike the charge of armed burglary after the Commonwealth failed to prove beyond a reasonable doubt that petitioner was armed.

Resp. Ex. B.

After the respondent filed a motion to dismiss the petition, the Supreme Court of Virginia directed that an evidentiary hearing be conducted on specified factual issues arising from Claim 1 and a portion of Claim 5 as listed above. Resp. Ex. C. The circuit court conducted the hearing on December 14, 2016 and certified its findings to the Supreme Court of Virginia on February 3, 2017. Resp. Ex. D. On May 30, 2017, the Supreme Court dismissed Cutrell's habeas corpus petition. Cutrell v. Clarke, R. No. 160297 (Va. May 30, 2017); Resp. Ex. E. Cutrell's motion for rehearing was denied on October 5, 2017.

Cutrell then turned to the federal forum and timely filed the instant application for § 2254 relief by placing it into his institution's mailing system on October 13, 2017. Pet. at 16. He makes the following claims:[1]

1.      He received ineffective assistance of counsel during plea negotiations:

---

[1]As respondent notes, the petition and an attachment are not clearly organized; multiple grounds for relief are argued in some subclaims, and the numbering of claims and subclaims is inconsistent between the two documents. Accordingly, respondent renumbered some claims in his brief for clarity's sake. Petitioner adopted respondent's reorganization in his response, and it thus is used here as well.

      a.       Counsel incorrectly told him that he could not plead guilty while maintaining his innocence.

      b.       Counsel provided him with insufficient notice of the plea offer.

      c.       Counsel failed to "find out the specifics" of the 10-year plea offer made a week before trial.

      d.       Counsel disregarded Cutrell's express wish to seek a continuance.

      e.       Counsel failed to advise him that he faced a life sentence.

2.       He received ineffective assistance of counsel during trial:

      a.       Counsel and the court failed to advise him of his right to testify on his own behalf.

      b.       Counsel did not challenge the Commonwealth's evidence that he brought a knife into the victim's home.

      c.       Counsel "never argued against grand larceny, even though [the] value" of the stolen items was not proven.

      d.       Counsel failed to "follow through" with the trial strategy of "undermining" the victim's identification and evidence that he brought a knife into the home.

      e.       Counsel did not object to the court's decision not to allow the jury to view his arm tattoos.

3.       He received ineffective assistance of counsel prior to trial:

      a.       Counsel met with him only on the day before trial.

      b.       Counsel denied him the opportunity to discuss trial strategy and to ask questions.

c.    Counsel failed to ask for a continuance at the pre-
      trial hearing and Cutrell thus had no opportunity to
      discuss the 10-year plea offer;

d.    After he stated that he felt unprepared for trial
      during a pretrial colloquy, counsel advised him  he
      would anger the court by "dragging [his] feet."

On February 15, 2018, respondent filed a Rule 5 Answer and a Motion to Dismiss the

petition with a supporting brief and exhibits, and provided petitioner with the notice required by

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. [Dkt. No. 16 - 18].

Petitioner filed a response  [Dkt. No. 23] and also sought leave to add nine exhibits to his habeas

application. [Dkt. No. 19] The motion to add exhibits was conditionally granted, subject to

respondent's ability to file objections to their admissibility pursuant to the rule of Cullen v.

Pinholster, 563 U.S. 170 (2011), and respondent filed no objections. [Dkt. No. 20].  Accordingly,

this matter is ripe for disposition.

## II.  Facts

In its Order dismissing Cutrell's petition for a state writ of habeas corpus, the Supreme

Court of Virginia  summarized the evidence presented at trial as follows:[2]

> ... [Cutrell's] convictions arise from the burglary of the home of
> Wade Smith.  The record, including the trial transcript,
> demonstrates Smith pulled into the driveway and noticed a car
> sitting in front of his house.  Smith heard the car's horn honk and
> then the car drove away.  When Smith went to unlock his side
> door, he noticed it was ajar.  Smith entered the house and saw an
> intruder exit the master bedroom and walk towards him.  The
> intruder was wearing a Cincinnati Reds baseball hat and a
> sleeveless shirt and was carrying a backpack Smith had not seen
> before.  The intruder asked Smith how to get out of the house, and

---

[2]Because a federal court on habeas review of a state conviction  must defer to findings of fact
made by state trial and appellate courts, 28 U.S.C. § 2254(d), it is appropriate to look to the state
court's recitation of the salient facts.

Smith responded that he was not getting out. Smith tried to call 911 and the intruder turned to go down the hallway, but then turned back towards Smith holding a knife that "resembled a kitchen knife." While brandishing the knife, the intruder moved towards Smith. Smith held up a chair to fend off the intruder, and then retreated outside and held the door shut while he continued to call 911. When Smith made contact with the 911 dispatcher, he released the door handle and the intruder exited the house. Smith chased the intruder, who was still carrying the backpack and the knife. Eventually, the intruder put the backpack down and ran away. The backpack, which the police recovered at the scene, contained Smith's two personal laptop computers, his work-issued laptop computer, and a single black glove. The incident lasted about ten minutes and Smith was able to observe the intruder during that time.

At trial, Smith identified [Cutrell] as the intruder, testifying he was "100 percent sure" [Cutrell] was the person who broke into his house. Before trial, the police had shown Smith two photo arrays. Smith testified that during the first array, he "identified some features that resembled [petitioner], but ... they were just features. None of them were ... the suspect at the time." At the second array, Smith selected [Cutrell's] photograph, but stated he was "about 85 percent sure." Smith testified he had been less certain because the photo was "very pixilated [and] lacked a lot of detail. So [he] estimated to the best of [his] judgment ... a percentage of [his] confidence."

[Cutrell's] co-defendant and former girlfriend, Crystal Snodderly, testified that, on the day of the crimes, she and [Cutrell] were driving around looking for a house to break into. They stopped at Smith's house because there was no car in the driveway. Snodderly waited in the car as a lookout while [Cutrell], who was carrying a backpack, entered the house. While [Cutrell] was in the house, Snodderly saw someone pull into the driveway. She honked the horn to get [Cutrell's] attention and then drove away. Later, Snodderly saw [Cutrell] running down the road without the backpack. [Cutrell] got into the car and told Snodderly someone had come into the house. [Cutrell] was holding a knife, which he later threw out of the car window. The police found a Cincinnati Reds baseball hat, like the one Smith described the perpetrator as wearing, in Snodderly's car.

DNA testing and analysis showed there was a mixture of more than one person's DNA in the black glove. The forensic scientist who performed the testing and analysis testified petitioner could not be "ruled out" as a contributor to the DNA and, therefore, the DNA "could have" been from [Cutrell]. The forensic scientist testified that if randomly selected "one in every eight people" in the Caucasian population, "one in 6.3" people in the black population, and "one in every 5.8" people in the Hispanic population "could possibly fit into this [DNA] mixture."

Cutrell v. Clarke, R. No. 160297, slip op. at 1 -2.

Following the evidentiary hearing mandated by the Supreme Court of Virginia during Cutrell's state habeas action, the circuit court made the following findings of fact and expressly rejected all other factual findings proposed by Cutrell:

1. [T]he Commonwealth made a "plea offer" to Mr. Cutrell ... which provided that in exchange for guilty pleas to the pending charges, the trial court would impose a 15 year active sentence, inclusive of show cause time. The plea offer expired the day before trial began.

2a. That trial counsel, during plea negotiations, did not advise Petitioner to reject the plea offer and insist on a jury trial. However, as Petitioner rejected the plea offer, counsel recommended going forward with a jury trial for the best opportunity to achieve an acquittal. ... The Court rejects all other facts alleged by Petitioner as to Paragraph 2a. of his Proposed Findings of Fact, with two exceptions. First, that Petitioner consistently maintained that he did not bring the knife into the victim's home and, second, that [counsel] Ms. Piper believed that Petitioner would not have been able to enter an acceptable plea to the charge of armed burglary if he maintained that he did not bring the knife into the home when he entered.

2b. That during plea negotiations, trial counsel advised Petitioner that armed statutory burglary carries a minimum of twenty years' incarceration and a maximum sentence of life.

2c. That trial counsel advised petitioner regarding the evidence that would be used against him. Additionally, Petitioner was present during the preliminary hearing and had an opportunity to observe the Commonwealth's witness, the victim, testify under oath. The

Court rejects all other facts alleged by Petitioner as to Paragraph 2c. of his Proposed Findings of Fact, with the exception of Ms. Piper's never filing a formal discovery motion. ... However, the Court finds that Ms. Piper had full access to the Commonwealth's file and was able to review as much or more evidence than would have been obtained through a formal discovery motion.

2d.   That trial counsel did not advise Petitioner that the evidence against him was inadmissible of [sic] insufficient. Once Petitioner elected to go to trial, this Court finds that counsel discussed potential weaknesses in the Commonwealth's case, for example, the identification of Petitioner by the victim.

2e.   That trial counsel discussed trial strategy with Petitioner. Specifically, counsel discussed issues related to the identification of Petitioner by the victim and potential cross-examination topics for his co-defendant and former girlfriend, who testified on behalf of the Commonwealth.

2f.   That Petitioner withdrew this issue from consideration as he acknowledged there was nothing counsel could do for him if he accepted the plea agreement and this claim was meant to apply to other charges.

As to the factual issues in Claim 5(c), the Court finds as follows:

5c.   That Petitioner was fully and properly advised regarding his right to testify and that, understanding this right, Petitioner chose not to testify.

Resp. Ex. D at 1-2, hearing transcript citations omitted.

## III. Exhaustion and Procedural Bar

Several of Cutrell's claims and portions of claims are procedurally barred from federal review on the merits. Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129, 134 (1987); Rose v. Lundy, 455 U.S. 509, 522 (1982). To comply with the exhaustion requirement, a petitioner "must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364, 366 (1995).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). "The procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." Id. at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). Thus, an unexhausted claim that would be defaulted if presented in state court is deemed to be simultaneously exhausted and procedurally barred from federal review. Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990).

In this case, claims 1(a) through 1(d), a portion of claim 2(a), and claims 2(b),[3] 3(a), 3(c) and 3(d) are procedurally defaulted from federal review pursuant to this rule. Cutrell failed to raise these arguments in his state habeas corpus proceeding. They are now incapable of

_____

[3]As to federal claim 2(a), Cutrell argued in the state forum only that counsel failed to advise him of his right to testify; he included no such allegation about the court. As to claim 2(b), Cutrell argued in his state habeas petition that counsel provided ineffective assistance by failing to call him to testify to rebut the Commonwealth's evidence that he was armed when he entered the victim's home. Resp. Ex. B, Att. 26. In this federal proceeding, he makes the distinct argument that counsel should have questioned the victim regarding his familiarity with kitchen knives and "pressed" Snodderly about the knife. Under these circumstances, the claim raised in this federal proceeding is not exhausted. See Pruett v. Thompson, 771 F.Supp. 1428, 1436 (E.D.Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993) (exhaustion requirement is satisfied only when "allegations advanced in federal court ... [are] the same as those advanced at least once to the highest state court").

exhaustion, because were they to be presented to the state courts at this juncture they would be subject to dismissal as both untimely, Va. Code § 8.01-654(A)(2), and successive, Va. Code § 8.01-654(B)(2). Therefore, these claims are defaulted for purposes of federal habeas review. See Bassette, 915 F.2d at 932.

Federal courts may not review a barred claim absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

"'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him ...." Coleman, 501 U.S. at 753. "[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard." Carrier, 477 U.S. at 488.

In his response to the Motion to Dismiss, Cutrell makes no attempt to establish cause for his default of his unexhausted claims. His assertion that he exhausted all claims in the state courts is patently mistaken. [Dkt. No. 23 at 10]. He also states without further explanation that

10

he can prove actual prejudice, such that failure to consider his claims would amount to a miscarriage of justice. [Dkt. No. 23 at 11]. Cutrell's unexplained and unsupported reliance on the actual innocence exception is plainly insufficient. In the context of procedural default of federal habeas claims, a gateway claim of actual innocence requires a petitioner to show "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." Schulp v. Delo, 513 U.S. 298, 324 (1995) (emphasis added). Petitioner has failed to do so here, and no fundamental miscarriage of justice will occur as the result of the procedural defaults at issue.

Cutrell also cites Martinez v. Ryan, 556 U.S. 1 (2012) in his response to the Motion to Dismiss. [Dkt. No. 23 at 11]. In that case, the Supreme Court:

> ... held that a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the 'cause' for default 'consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding'; (3) 'the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim'; and (4) state law 'requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding.

Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014) (quoting Trevino v. Thaler, 569 U.S. 413 (2013)). The Fourth Circuit has interpreted Martinez as creating a "narrow exception" to the general rule of Coleman, supra, which bars federal review of a claim that was not exhausted in the state courts. Fowler, 753 F.3d at 460-61. Cutrell's reliance on Martinez is unavailing as to all of his defaulted ineffective-assistance-of-trial-counsel claims, because in each instance, the allegations he makes are not sufficiently "substantial" to come within its "narrow exception." As

the court in that case stressed, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 456 U.S. at 14. It is the petitioner's burden to demonstrate that his claims are "substantial." Fowler, 753 F.3d at 461. Cutrell makes no attempt to meet that burden in his response; indeed, he simply cites Martinez and includes no argument whatever as to why it should apply to any of his defaulted claims. For the reasons which are thoroughly and correctly explained by the respondent, the defaulted claims and portions of claims all lack merit [Dkt. No. 18 at 17-21, 29], and Martinez accordingly does not apply.

### IV. Merits Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." Woodford v. Visciotti, 537

U.S. 19, 24-25 (2002). Thus, "[t]he question under the AEDPA is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Mandrigan, 550 U.S. 465, 673 (2007). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). "If this standard is difficult to meet - and it is - 'that is because it was meant to be.'" Burt v. Titlow, 571 U.S. 12, 20 (2013) (quoting Richter, 562 U.S. at 102).

When a federal habeas petitioner challenges the reasonableness of the factual basis for a state conviction, the AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" Schriro, 550 U.S. at 473-74. Under the AEDPA standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table).

## V. Analysis

In all of Cutrell's cognizable claims, he argues that he received ineffective assistance of counsel for various reasons. To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance." Id. at 689; see also, Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (explaining that the court must "presume that challenged acts are likely the result of sound trial strategy"). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Id. at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

Claim 1:

In Claim 1(d), the sole exhausted portion of Claim 1, Cutrell argues that counsel provided ineffective assistance by failing to advise him that he faced a potential life sentence for armed burglary. In rejecting this argument as well as petitioner's related contentions, the Supreme Court of Virginia determined:

> The record, including the affidavit of counsel, counsel's handwritten notes attached as Exhibit C to the affidavit,[4] and the circuit court's findings of fact, demonstrates the Commonwealth made a second offer to petitioner, which provided that in exchange for guilty pleas to the pending charges, the Commonwealth would agree to a fifteen-year active sentence, inclusive of petitioner's probation violations.[5] Counsel communicated this offer to

---

[4]Counsel's affidavit and notes are found in the federal record at Exhibit A-5 to respondent's brief. [Dkt. No. 18].

[5]The Commonwealth previously had offered Cutrell a plea agreement whereby he would serve ten years on his pending felony and misdemeanor charges, but which made no provision for the disposition of future proceedings for violations of his "numerous previously suspended sentences." Cutrell's state habeas application did not mention this earlier offer and did not assert

> petitioner before trial and he rejected it before trial.
>
> The record, including the affidavit of counsel, counsel's handwritten notes attached as Exhibits A and C to the affidavit, and the circuit court's findings of fact, further demonstrates that, before counsel rejected the fifteen-year offer, counsel advised petitioner armed statutory burglary carries a minimum of twenty years' incarceration and a maximum sentence of life in prison.

Cutrell v. Clarke, Resp. Ex. E, slip op. at 4.

Cutrell has come forward with no "clear and convincing evidence" which would call into question the state court's determination that counsel advised Cutrell that he could be sentenced to as much as life in prison if he were convicted of armed statutory burglary. Because the AEDPA requires federal habeas courts to presume the correctness of factual findings under such circumstances, Schriro, 550 U.S. at 473-74, Claim 1(d) of this petition warrants no relief.

Claim 2:

In the exhausted portion of Claim 2(a), Cutrell contends that counsel failed to advise him of his right to testify in his own defense. When he made this same argument in his state habeas corpus petition, the Supreme Court of Virginia determined that, to the contrary, "[t]he record, including the affidavit of counsel, the hearing transcript, and the circuit court's findings of fact, demonstrates petitioner was fully and properly advised regarding his right to testify and that, understanding this right, petitioner chose not to testify. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different." Cutrell v. Clarke, Resp. Ex. E, slip op. at 9. Because Cutrell has come forward with no clear and convincing evidence to rebut the correctness of Virginia court's factual determinations, they must

---

any claim of ineffective assistance with respect to it. Cutrell v. Clarke, Resp. Ex. E, slip op. at 4.

be presumed correct. Schriro, 550 U.S. at 473-74. Accordingly, because that court's rejection of Cutrell's claim was based on a reasonable determination of the facts and was not an unreasonable application of clearly established federal law, the same result is compelled here. Williams, 529 U.S. at 412-13.

In Claim 2(c), Cutrell argues that counsel provided ineffective assistance by failing to challenge the grand larceny charge on the ground that the value of the stolen items was not proven. Specifically, he contends that the Commonwealth failed to establish that the stolen computers were valued at or above the $200 minimum required to support a grand larceny conviction, because the only evidence offered to support such a conclusion was the victim's "self-serving" testimony that each computer had a value of $800. The Supreme Court of Virginia held that this argument satisfied neither prong of the Strickland analysis:

> "Generally, the opinion testimony of the owner of personal property is competent and admissible on the question of the value of such property, regardless of the owner's knowledge of property values." Walls v. Commonwealth, 248 Va. 480, 450 S.E.2d 363, 364 (1994). Therefore, counsel could reasonably have determined Smith's testimony, at least as to the value of his two personal laptop computers, was admissible and competent, and because he valued them well over $200, any challenge to the admissibility of his valuation testimony or to the sufficiency of the Commonwealth's evidence to prove the monetary element of grand larceny would have been futile. See Corell [v. Commonwealth], 232 Va. [454,] 469-70, 352 S.E.2d [352,], 361 [(1987)]. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Cutrell v. Clarke, Resp. Ex. E, slip op. at 6 - 7.

The Virginia court's resolution of this claim was neither contrary to nor based upon an unreasonable application of clearly established federal law, nor was it based on an unreasonable

determination of the facts. Essentially, Cutrell in this claim "asks this court to reverse the Supreme Court of Virginia on the question of whether it was objectively unreasonable for an attorney in Virginia to fail to make an objection based purely on Virginia law ... [T]his is an issue on which our deference to the state courts should be at its zenith." Lenz v. Washington, 444 F.3d 295, 307 (4th Cir. 2006) (quoting Barnabei v. Angelone, 214 F.3d 463, 471-72 (4th Cir. 2000), abrogated on other grounds by Snodderly v. Jarvis, 236 F.3d 149, 160 n. 7 (4th Cir.2000) (en banc)). Accordingly, no relief is warranted on this claim.

In Claim 2(d), Cutrell asserts that counsel was ineffective for failing to undermine his identification by the victim. Specifically, he argues that counsel should have challenged both his less-than-certain pretrial identification by the victim as well as the victim's failure to mention that the intruder's arms were prominently tattooed. As to the first argument, the Supreme Court of Virginia held:

> The record, including the trial transcript and the manuscript record, demonstrates Smith had ample opportunity to view the petitioner during their encounter. There is no evidence in the record to show whether petitioner's photograph was even included in the first array. As to the second array, Smith's eighty-five percent level of certainty did not render his identification inadmissible but rather, was a matter for the trier of fact to consider in determining his credibility and the weight to be given his testimony. Counsel could thus reasonably have determined any motion to suppress Smith's identification based upon his uncertainty during the photo arrays would have been futile See Corell ... 352 S.E.2d [at] 361 .... Furthermore, counsel challenged Smith's identification by cross-examining him about his failure to definitively identify petitioner during the photo arrays and by arguing to the jury that based on the evidence presented there was reasonable doubt as to the petitioner's identity as the perpetrator.

Cutrell v. Clarke, Resp. Ex. E, slip op. at 5 - 6.

As to Cutrell's argument that counsel should have demonstrated the untrustworthiness of

the victim's identification because the victim never mentioned his arm tattoos, the Court found:

> Petitioner fails to proffer any photographic evidence or description of what his tattoos looked like at the time of the offenses. Additionally, the record, including the hearing transcript and the trial transcript, demonstrates counsel determined the least risky and most appropriate way to raise the issue of petitioner's tattoos at trial was to question Snodderly about them and "not to corner" Smith on this issue. Counsel gave Smith every opportunity to mention the tattoos without actually asking him if petitioner had tattoos when she cross-examined Smith about the sleeveless shirt he said the intruder was wearing. Counsel then elicited testimony from Snodderly that both of petitioner's arms were "completely covered" like a shirt sleeve "[f]rom shoulder to wrist" with tattoos. Counsel used Snodderly's testimony to argue to the jury that Smith's failure to mention petitioner's tattoos called into question his identification of petitioner as the perpetrator. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Cutrell v. Clarke, Resp. Ex. E, slip op. at 7 - 8.

It is well settled in federal jurisprudence that "'strategic choices made [by counsel] after thorough investigation ... are virtually unchallengeable....'" Gray v. Branker, 529 F.3d 220, 229 (4th Cir.), cert. denied, 129 S. Ct. 1579 (2009) (quoting Strickland, 446 U.S. at 690-91). Thus, "[a]ttorneys can be selective and strategic without risking an ineffective assistance of counsel claim." United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014). A considered choice regarding the use of defenses is one such strategic choice, and it consequently is entitled to a "strong presumption" that it amounted to reasonable professional assistance. Cardwell v. Netherland, 971 F. Supp. 997, 1019 (E.D. Va. 1997). Cutrell's present claim is foreclosed by this principle.

As to the photo arrays, counsel questioned the victim as to his failure to identify Cutrell definitively. Tr. 1/31/13 at 78 - 79. She pointed out that the victim finally identified Cutrell with

certainty only at the preliminary hearing, after he been accused by the Commonwealth of committing the crimes. Id. at 79 - 80. The victim acknowledged that by then, Cutrell "was really the only person that [he] had a choice of." Id. at 80. During closing argument, counsel suggested that the victim had identified Cutrell at trial because "no one else [was] sitting at defense table with ... [me]." Id. at 194. She also pointed out that the victim selected another person from the first photo array and was not 100% certain when he identified Cutrell from the second array. Id.

As to the victim's failure to mention Cutrell's arm tattoos, counsel elicited from him that the intruder was wearing a "sleeveless shirt" and was not wearing gloves. Tr. 1/31/13 at 75 - 76. Counsel established that Cutrell had full arm tattoos through cross-examination of Snodderly. Id. at 162 - 63. During closing argument, counsel emphasized the lack of conclusive DNA evidence linking Cutrell to the crimes. Id. at 192 - 93. She noted that the victim had failed to identify Cutrell by his fully tattooed arms, even though the intruder was wearing a sleeveless shirt. Id. at 195. In sum, she urged the jury to find that the victim was mistaken in his identification because he was in a stressful situation during his encounter with the intruder and was more focused on the knife than on the man holding the knife. Id. at 194.

The strategy reflected in these lines of questioning was reasonable and is deserving of deference. Gray, 529 F.3d at 229. Counsel effectively challenged the victim's identification of Cutrell as the intruder while avoiding the possibility that if asked directly, he might have affirmed that the intruder did in fact have full arm tattoos. See Green v. Ballard, 2015 WL 1612198, *30 (S.D. W. Va. Apr. 10, 2015) ("A cardinal rule in litigation is that an attorney should never ask a question to which he or she does not know the answer.") Because the Supreme Court of Virginia's rejection of this claim was factually reasonable and in accord

with <u>Strickland,</u> its determination may not be disturbed. <u>Williams,</u> 529 U.S. at 412-13.

In Claim 2(e), Cutrell contends that counsel rendered ineffective assistance by failing to object to the trial court's ruling that the jury could not view his tattooed arms. In context, it is apparent that any such objection would have been futile.

> The record, including the trial transcript, demonstrates that, after the jury was instructed and closing arguments were completed but before deliberations began, the jury asked if it could see petitioner's tattoos. The trial court denied the request, advising the jury that the evidence was closed and it would have to judge the evidence based upon the testimony of the witnesses "who may have testified to that." "A motion to admit evidence after the evidence has been closed comes too late. The court [may], in its discretion, ... permit[] the reopening of the trial for that purpose, but [does] not abuse its discretion in refusing to do so ...." <u>Reifman v. Gorsen,</u> 273 Va. 445, 446, 643 S.E.2d 197, 198 (2007) (citations omitted). Counsel could thus reasonably have determined any objection to the court's denial of the jury's request would have been futile. <u>See</u> <u>Corell,</u> 232 Va. at 454, 352 S.E.2d at 361. Counsel could reasonably also have determined such an objection was unnecessary given the other evidence concerning petitioner's tattoos that was already before the jury, namely Snodderly's uncontradicted testimony that petitioner's arms were covered in tattoos. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Cutrell v. Clarke,</u> Resp. Ex. E, slip op. at 9 - 10.

For the reasons stated by the Virginia court, an objection to the denial of the jury's request to see Cutrell's arm tattoos properly would have been overruled, and counsel's failure to do so satisfies neither of the <u>Strickland</u> requirements. Moreover, the jurors had been made aware through Snodderly's testimony that Cutrell's arms were "completely covered" "from the shoulder to [the] wrist" with tattoos, Tr. 1/31/13 at 163, such that viewing the tattoos themselves would have amounted to no more than cumulative evidence. Accordingly, the rejection of this claim by

the Virginia courts was factually reasonable and in accord with <u>Strickland,</u> and that result must

be allowed to stand. <u>Williams,</u> 529 U.S. at 412-13.

    <u>Claim 3</u>:

    In Claim 3(b), the sole portion of Claim 3 which is not defaulted, Cutrell asserts that he

was denied the opportunity to discuss trial strategy with counsel and to ask her questions. In

rejecting this contention, the Supreme Court of Virginia found as follows:

> [B]efore petitioner rejected the fifteen-year offer, counsel advised
> petitioner armed statutory burglary carries a minimum of twenty
> years' incarceration and a maximum sentence of life in prison.
> Counsel advised petitioner regarding the evidence that would be
> used against him, and did not advise petitioner that the
> Commonwealth's evidence was inadmissible or insufficient.
> Additionally, petitioner was present during the preliminary hearing
> and had an opportunity to observe Smith and Snodderly testify
> under oath. Counsel discussed trial strategy with petitioner.
> Specifically, counsel discussed issues related to Smith's
> identification of petitioner, potential cross-examination topics for
> Snodderly, and weaknesses in the Commonwealth's DNA
> evidence. Counsel advised petitioner of an estimate of the
> sentence counsel believed it was likely the jury would impose if it
> found petitioner guilty and told petitioner it was his choice whether
> to accept or reject the plea offer. Counsel did not advise petitioner
> to reject the offer and insist on a jury trial. Petitioner
> acknowledged at the habeas hearing there was nothing further
> counsel could do with respect to petitioner's charges arising from
> the burglary of Smith's home if petitioner accepted the plea
> agreement.

<u>Cutrell v. Clarke</u>, Resp. Ex. E, slip op. at 4 -5.

    When appropriate deference is paid to the factual determinations reflected in the

foregoing discussion, <u>Schriro</u>, 550 U.S. at 473-74, it is apparent that this claim satisfies neither

prong of the <u>Strickland</u> analysis. Accordingly, the Virginia court's rejection of it will not be

disturbed. <u>Williams</u>, 529 U.S. at 412-13.

## VI. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss this petition will be granted,

and the petition will be dismissed with prejudice by an appropriate Order to be issued with this

Memorandum Opinion.

Entered this _10th_ day of _May_ 2018.

Alexandria, Virginia

_/s/_

Leonie M. Brinkema
United States District Judge